## W. R. JOHNSON *et al. v.* T. J. DONOHUE *et al.*

### (*Knoxville.* September Term, 1904.)

1. **ASSIGNMENT OF CHOSES IN ACTION.** Assignment of funds accrued and to accrue subsequently under an existing contract may be validly made.

   The assignment of funds already accrued and all the contingent funds that may hereafter accrue under an existing contract, perfected by notice, may be validly made, and will entitle the assignee to the funds; for while the subsequently accruing funds are contingent, still they have a potential existence when the assignment is executed.

   Cases cited and approved: Winslow v. Insurance Co., 4 Metc. (Mass.), 306; Jones v. Richardson, 10 Metc. (Mass.), 481; In Re Howe, 1 Paige, 125; White v. Carpenter, 2 Paige, 217; Field v. New York, 6 N. Y., 179; Mitchell v. Winslow, 2 Story, 630; Willink v. Canal & Banking Co., 4 N. J. Eq., 377; Butt v. Ellett, 19 Wall., 544; Pennock v. Coe, 23 How., 117.

2. **SAME.** Same. Right of assignee is not affected by assignors' bankruptcy so far as subsequent creditors are concerned.

   Where an insolvent debtor, within four months prior to his being adjudged a bankrupt, made an assignment of a contingent fund having a potential existence, but to accrue thereafter under an existing contract, the assignment is not invalidated by such adjudication of bankruptcy in favor of creditors whose debts were created after the bankrupt's final discharge.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. —T. M. McCONNELL, Chancellor.

CORNICK, WRIGHT & FRANTZ, for complainants.

JOHN P. MURPHY and J. E. FULTON, for defendant Donohue.

THOMAS & THOMAS and R. T. WRIGHT, for defendants Stagmier & Co.

FLETCHER, HEAD & ANDERSON, for defendant railroad.

———————

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This controversy is over a fund now in the registry of the court below, where it awaits the determination of this cause. The defendant Donohue, before the bringing of the suit, had gone through the bankrupt court, and had received his discharge. The complainants claim the fund by attachment issued on debts which accrued after this discharge was granted, while the defendants Stagmier and Fletcher rest their right to the same upon an assignment made to them by Donohue prior to the institution of the bankruptcy proceedings. The record shows that Stagmier and Fletcher were creditors of their codefendant, Donohue, and within four months before he was forced into involuntary bankruptcy they surrendered the account which they had against him, and in its stead took an assignment covering funds which were, at its date, in the hands of the railway company, and such funds as were thereafter to

accrue to the assignor upon a contract theretofore entered into between this company and Donohue. The Cincinnati, New Orleans & Texas Pacific Railway Company was the owner of a certain hotel property located at the town of Oakdale, on its line. This property was leased by the company to Donohue, to be used by him for hotel purposes. The contract contemplated that the employees of the road would, from time to time, receive entertainment at this hotel, and the company stipulated that the sums accruing therefrom should be collected by the company, and paid upon vouchers prepared by the company to Donohue; charging for these services five per cent. upon the amount of such indebtedness. This contract was to be operative during the term for which the lease was given. Immediately after the assignment, notice was given of its execution by Stagmier and Fletcher to the railway company. Upon this assignment $150 of the fund, then accrued, was paid by the company to the assignees, and soon thereafter the proceedings in involuntary bankruptcy were instituted by his creditors against the assignor. In the schedule of liabilities furnished by the bankrupt in these proceedings there was included the claim of these assignees. The record, however, shows they did not file a claim against the bankrupt estate, and in no way did they become parties to these proceedings.

As has already been stated, the debts of complainants against Donohue were created after the discharge in bankruptcy. The present bill is filed to subject the

Johnson v. Donohue.

fund arising upon the contract hereinbefore referred to, after these bankruptcy proceedings were instituted, and the theory upon which complainants seek to maintain it is that the discharge issued to Donohue wiped out the debts of Stagmier and Fletcher, and made inoperative their assignment as to so much of the fund as accrued after these bankrupt proceedings were begun, and thus left open for seizure by complainants this fund as the property of their debtor, Donohue. To the contrary, Stagmier and Fletcher insist that the effect of the assignment was to give them an equitable claim, not only to the fund in existence at the time it was made, but to all future accruals from the contract between Donohue and the railway company.

We think the insistence of the defendants is sound, and under their assignment, as funds arose from time to time from this contract, the assignees had a right to have them applied to the satisfaction of their claim. While it is true the general rule of common law was that nothing could be mortgaged which was not in existence, or did not belong to the mortgagor at the time the mortgage was executed, yet this rule was founded solely on a technicality. *Winslow* v. *Merchants' Ins. Co.*, 4 Metc. (Mass.), 306, 38 Am. Dec., 368; *Jones* v. *Richardson,* 10 Metc., 481. The rule of the civil law was otherwise, and this rule has been adopted by the courts of equity in England, and by many, if not by a large majority, of those in America, without limitation.

113 Tenn—29

By others of the courts in this country the rule has been applied with the qualification that the thing mortgaged or assigned must have a potential existence at the time the instrument was executed. It is immaterial, however, in the present case, whether the broad rule or the rule with this qualification is adopted, for in either case the rights of the assignees to this fund, we think, is beyond question; for the fund did have a potential existence when the assignment in question was executed. The contract between the railway company and Donohue was then operative, and the fund which thereafter accrued was as much the outcome of this contract as that paid over to the assignees by the railway company soon after the assignment. The weight of authority is that the rule of the civil law, when necessary to carry into effect the honest and just contracts of parties according to their real intentions, will be enforced. This view has been taken in the *Matter of Howe,* 1 Paige, 125, 19 Am. Dec., 395; *White* v. *Carpenter,* 2 Paige, 217; *Field* v. *Mayor of New York,* 6 N. Y., 179, 57 Am. Dec., 435; *Mitchell* v. *Winslow,* 2 Story, 630, Fed. Cas., No. 9,673; *Willink* v. *Morris Canal & Banking Co.,* 4 N. J. Eq., 377; *Butt* v. *Ellett,* 19 Wall., 544, 22 L. Ed., 183; *Pennock* v. *Coe,* 23 How., 117, 16 L. Ed., 436. Judge Story, in his work on Equity Jurisprudence, at section 1040, says that courts of equity have long since totally disregarded the nice or technical rule of the common law by giving effect "to assignments of trusts and possibilities of trust, and contingent interests, and ex-

pectancies, whether they are in real or personal estate."
This author further said that: "Every such assign-
ment is considered in equity as in its nature amounting
to a declaration of trust, and to an agreement to permit
the assignee to make use of the name of the assignor in
order to recover the debt or to reduce the property into
possession. . . . To make an assignment valid at
law, the thing which is the subject of it must have actual
or potential existence at the time of the grant or assign-
ment; but courts of equity will support assignments not
only of choses in action, and of contingent interests, and
expectancies, but also of things which have no present,
actual, or potential existence, but rest in mere possibil-
ity; not, indeed, as a present positive transaction oper-
ative *in praesenti,* for that can only be of a thing *in
esse;* but as a present contract to take effect and attach
as soon as the thing comes *in esse.* Thus, for example,
the assignment of the head-matter and whale oil to be
caught in a whaling voyage now in progress will be
valid in equity, and will attach to the head-matter and
oil when obtained."

If this be true—and that it is is abundantly sustained
by authority, as well as reason—it necessarily follows
that no act of the assignor, or of any creditor of his,
made subsequent to this assignment, completed as it was
by notice to the railway company, could affect the rights
of these assignees.

But it is said these parties at the time of taking this
assignment had reasonable grounds for believing that

Johnson v. Donohue.

Donohue was insolvent, and that, inasmuch as the as-signment was made within four months of the filing of the petition in bankruptcy, it was void under the bank-rupt law. But that law only worked this effect in favor of creditors of the bankrupt whose debts were in exist-ence at the time of the bankruptcy, or of the assignee representing these creditors. No such party is here in-voking the benefit of this statutory provision, and, what-ever might be the result in a controversy instituted by one of that class, certainly the plaintiffs, whose debts were created after the bankrupt proceedings were ended by the final discharge of Donohue, will not be permitted to profit by it. This was the view entertained by the court of chancery appeals, and its decree dismissing the bill and establishing the rights of the assignees is there-fore affirmed.