## J. L. SPICER v. KING BROS. & COMPANY.

### (*Knoxville.*   September Term, 1916.)

**1. STATUTES.   Subjects and titles of acts.   Duplicity.**

Acts 1905, chapter 109, regulating the business of lending money on personalty or wages, and buying wages, while treating the two subjects of lending and buying, is not bod for embracing two subjects, those treated not being incongruous and unrelated, beyond a reasonable doubt.   (*Post, pp.* 411-414.)

Acts cited and construed:  Acts 1905, ch. 109.

Cases cited and approved:   Clodfelter v. Fox, 33 Tenn., 328; Johnson v. Donohue, 113 Tenn., 446;  Peters v. Goetz, 188 S. W., 1144;  Knowles v. Masterson et al., 22 Tenn., 621;  Moore v. Walker, 71 Tenn., 657;  Myers v. Ross, 40 Tenn., 63;  Turbeville v. Gibson, 52 Tenn., 682;  Coal Co. v. Alley, 127 Tenn., 173;  Arendale v. Morgan, 37 Tenn., 704;  State ex rel. Morrell v. Fickle, 71 Tenn., 79;  Truss v. State, 81 Tenn., 311;  Knoxville v. Gass, 119 Tenn., 438.

Code cited and construed:  Sec. 3516 (S.).

Constitution cited and contrued:  Art. 2, sec. 17.

**2. CONSTITUTIONAL LAW.   Due process of law.**

Such act, because section 16 thereof requires bonds and reports and regulates the lending of money and taking liens on wagons, buggies, live stock, agricultural products or farming implements, without applying to loans on automobiles, bicycles, motorcycles, and other similar articles, violates Const., art. 11, sec. 8, prohibiting inference with rights and privileges except by the law of the land.   (*Post, pp.* 414, 415.)

Constitution cited and construed:   Art. 11, sec. 8.

**3. STATUTES.   Local and special laws.**

If such section could be elided, the law would still be unconstitutional, since section 17 makes it apply only to counties of

Spicer v. King Bros. & Co.

50,000 population, and it is therefore a local law, and invalid under Const., art. 11, sec. 8.   (*Post, pp.* 415-417.)

Cases cited and approved:   State v. Turnpike Co., 133 Tenn., 446; State v. Kerby, 189 S. W., ——.)

4. **STATUTES.** Construction. Elision.

Section 16 cannot be elided, since the statute would then apply to all lenders on personalty except banks and certain merchants, and the court could not say that the act would have been passed without such section.   (*Post, p.* 417.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County. —WILL D. WRIGHT, Chancellor.

MALCOLM MCDERMOTT and HARRY S. HALL, for appellant.

S. E. HODGES, for appellee.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The complainant filed his original bill in the chancery court of Knox county for the purpose of having certain transactions had between him and the defendants declared null and void under chapter 109, Acts 1905. The defendants demurred to the bill and the Chancellor sustained the demurrer and dismissed it, from which an appeal has been taken to this court and errors assigned.

The questions for decision involve the validity of the act referred to. Its caption is as follows:

"An act to regulate the business of lending money on personal property, wages, or salaries, and the buying of salaries or wages; and to prescribe the penalties for its violation in counties of not less than fifty thousand population, according to the federal census of 1900, or any subsequent federal census."

The first section of the act prohibits any person, firm, or corporation from engaging in the business of making loans on personal property or wages or salaries, or in the business of buying wages or salaries, without filing bond as provided in the act. The subsequent sections of the act, down to section 15, provide a system of regulation and bookkeeping for inspection, as well as bond and license for those who engage in the business referred to in the act. It is not necessary to set out the detail provisions of the act.

Section 15 excepts from the operation of the act banks, or merchants, who furnish goods or supplies and take mortgages or other liens on personal property to secure such debts. Section 16 excepts from the operation of the act persons, firms, or corporations who loan money or furnish goods and take a mortgage or lien on buggies, wagons, live stock, agricultural products, or farming implements. Section 17 limits the application of the act to counties having a population of 50,000 or over by the federal census of 1900, or any subsequent federal census.

The objections made to the act, which will be considered in this opinion, are that it violates the two subjects clause of the State Constitution (article 2, section 17), and that it is class legislation by virtue of the exceptions above pointed out.

It will be observed that the title of the act relates to the regulation of the business of lending money on personal property, wages, or salaries, and the buying of salaries or wages. Undoubtedly two subjects are embraced within the title, but the question for determination is, Are they such as are forbidden by the Constitution? We think a fair construction of the act is that it contemplates the regulation of the business of lending money on personal property, wages, or salaries only where the lender intends to secure a lien upon the personal property, wages, or salary, and the business of buying salaries. It could only be in this aspect that the legislature or the public could have any interest in the contract of lending. Such a lien is generally secured by what is known to the law as an assignment. An account for wages earned or unearned is assignable under our Code (Shannon, section 3516). Prior to the Code, such a transaction was recognized by the decisions of this court as being valid. *Clodfelter* v. *Cox,* 1 Sneed, 328, 60 Am. Dec., 157; *Johnson* v. *Donohue,* 113 Tenn., 446, 83 S. W., 360; *Peters* v. *Goetz,* 188 S. W., 1144, this term.

The lien may be secured upon salaries, earned or unearned, in such manner as the parties may agree

upon. So, when reduced to its simplest form, the question is whether an act, which regulates lending money and procuring liens upon personal property, salary, or wages, can be combined with an act which regulates the sale of salaries or wages without violating the two subjects clause of the Constitution.

It is undoubtedly true, as a general proposition, that mortgagees or other lienors are purchasers to the extent of their mortgages or liens. *Knowles* v. *Masterson et al.,* 3 Hump., 621; *Moore* v. *Walker,* 3 Lea, 657. And so is a trustee under a trust deed to secure a debt. *Myers* v. *Ross,* 3 Head, 63; *Turbeville* v. *Gibson,* 5 Heisk., 682. And so is the conditional vendee of personal property. *Coal Co.* v. *Alley,* 127 Tenn., 173, 154 S. W., 536. And so is a holder of a pledge. *Arendale* v. *Morgan,* 5 Sneed, 704.

But all of the foregoing transactions involve deliveries to the lienor for the purpose only of securing the loan, and they all contemplate that the thing so delivered is to be returned to its owner upon the payment of the sum agreed upon with proper charges. The parting with the thing by the owner in such cases always contemplates that the delivery is for a fixed or indefinite time, and at all events, the time is to have an ending, so that the thing delivered may be returned to its owner. 25 Cyc., 183.

But in the case of a sale, there is a material difference. Its essence is the transfer of an article from the buyer to the seller for a price without any agreement or understanding between them that the thing

is to be returned. The property in the thing acquired by the buyer is general or absolute. 35 Cyc., 27.

The statute under consideration uses the word "sale" as applied to salaries or wages, but the proper nomenclature to be applied to such a transfer is "assignment." Personal property in possession is the subject of sale, but salaries or wages accounts, earned or unearned, are subjects of assignments. At common law property not in possession was incapable of sale or assignment, but under our Code, supra, they are now assignable. It is sufficient that they have actual or potential existence at the time of the assignment. 4 Cyc., 11, 12; 2 R. C. L., 593; 5 C. J., 836.

The difference between the terms employed by the legislature in the act in controversy and the proper nomenclature is technical, although it is substantial, and the legislature is presumed to have known this difference, as well as the distinction between assignments and liens.

The transaction of which complainant complains was a sale of his salary as an employee of the Southern Railway Company, earned by him from the 1st of December, 1915, to the 17th of January, 1916, amounting to $64.50, at the price of $60. This was an absolute and unconditional sale of the wages account, and was not a loan or advance of money or a discount. The complainant was not a debtor to the defendant, and the transaction was an original one.

Can it be said beyond a reasonabe doubt that the two subjects embraced in the act are incongruous and unrelated to each other? We think not. While it is true that the two businesses regulated by the statute fall under different branches of the law, they both affect the interest acquired by the person, firm, or corporation regulated in personal property and choses in action. The difference between a sale of the chose and a lien upon the chose, or personal property, is in degree only. The lienor is a purchaser *pro tanto,* while the buyer is a purchaser absolutely. One person, firm, or corporation, under one license, may well engage in the business of buying and lending money on personal property, wages or salaries. *State ex rel. Morrell* v. *Fickle,* 3 Lea, 79; *Truss* v. *State,* 13 Lea, 311; *Knoxville* v. *Gass,* 119 Tenn., 438, 104 S. W., 1084.

A more serious difficulty is the discrimination made by sections 15 and 16 of the act. Section 1 makes it unlawful for any person, firm, or corporation to engage in the business of making loans on personal property or wages or salaries, or in the business of buying wages or salaries without first submitting to the regulations provided in the act. Section 15 excepts banks, and merchants who furnish goods or supplies and take a mortgage or other lien on personal property to secure the debt. This exception has a substantial relation to the main purpose of the act, because banks are engaged chiefly in making loans and discounts, and handling money, and the merchants excepted by this section are those who furnish goods

or supplies and take a lien to secure the debt. It is very doubtful whether such merchants would fall within those included in the first section of the act, and this exception seems to have been inserted out of the abundance of caution. But section 16 excepts from the operation of the act persons, firms, or corporations who lend money or furnish goods and take a mortgage or lien on buggies, wagons, live stock, agricultural products, or farming implements. There are many other articles of personal property which stand upon the same basis as those enumerated, and which are not excepted. For instance, there are automobiles, bicycles, mortorcycles. No reason has been made to appear why persons, firms, or corporations may lend money and take a mortgage or lien on buggies, wagons, live stock, agricultural products or farming implements, while others, similarly situated, may not lend money and take a mortgage or lien on automobiles, bicycles, mortorcycles, and the like. This exception we hold violates section 8, article 11, of our Constitution.

It was said at the bar:

"That if the court should be of opinion that section 16 is an arbitrary exception, and for that reason is obnoxious to the Constitution, the court should elide this section and allow the balance of the act to stand."

But without deciding at this point whether the section should be elided, other questions out of the way, it is certainly true that the court would not elide it and allow the remainder of the act to stand if, after

making such elision, the act violates some other pro-
vision of the Constitution. Hence if we should elide
section 16, we would have an act which regulates the
business of lending money on personal property and
wages or salaries and of buying salaries, except as
to banks and merchants who furnish supplies and
take a mortgage or lien on personal property to se-
cure the debt, in counties of 50,000 population and
more. Such an act would plainly be obnoxious to sec-
tion 8 of article 11 of the Constitution, forbidding the
legislature from passing local laws. This act does
not concern the counties as governmental agencies
or in the exercise of governmental functions. It re-
lates exclusively to the control of citizens in their
private business affairs. It is true that the public
may have an interest in the business of buying salaries
or wages, or lending money on them and personal
property; but we can conceive of no reason why the
public would not have precisely the same interest in
the subject in counties of less than 50,000 population.
It is said that such a law is properly limited to
counties of exceeding 50,000 population because the
laborers are those who most frequently sell their
salaries or wages, and they are congregated at the
centers of population; but this argument overlooks
the further provision of the act that lending money
on personal property is placed in the same category
as lending money on wages or salaries, or buying
wages or salaries. Personal property does not ex-
ist alone at the centers of population, and we cannot

Spicer v. King Bros. & Co.

say, because it is doubtless untrue, that money is not loaned upon personal property in counties of less than 50,000 population. So we would have an act which would make it unlawful to lend money in counties of 50,000 population and over unless the lendor first submitted to its regulations, whereas, in counties of less population, citizens similarly situated may do it without submitting to the regulations of the act. So understood, the statute is plainly invalid under *State* v. *Turnpike Co.*, 133 Tenn., 446, 181 S. W., 682, and *State* v. *Kerby*, 9 Thompson (136 Tenn.), 386, 189 S. W., —, this term.

It is also obvious that we cannot elide section 16. With this section eliminated, the statute would apply to all who lend money on personal property except banks and a certain class of merchants. We cannot say that the legislature would have passed the act with such an application. ·On the contrary, we are strongly of the opinion that it would not have done so. Such an act would have made it necessary for all persons lending money upon personal property, with the exceptions stated, to submit to its regulations, and this would have impaired, if it had not conclusively prevented, numerous transactions which occur daily in the business experience of the people.

Therefore we are of opinion that the statute must be considered with section 16 in it, and, so considered, it is unquestionably void. The decree of the chancellor is affirmed, with costs.