A. P. McWhite v. The State.

(*Nashville.* December Term, 1920.)

1. **USURY.** Assignment of wages not within the usury laws.

An agreement whereby wage-earner assigned at ·a discount ˙a por-
tion of ˙his wages to be earned in the future, when not a cloak
. to cover a loan, is not within the usuary laws. (*Post, pp.* 225-
226.)

Case cited and approved: Spicer v. King Bros. & Co., 136 Tenn., 413.

2. **USURY.** Transaction held loan, despite salary assignment, and
so subject to the usury laws.

In a prosecution for violation of the usury laws, the courts will
disregard the form and look to the real substance therefor, not-
withstanding defendant took assignments of wages to be paid in
the future, which on their face were without the usury laws, yet.
where the assignments were not recorded, and it appeared that
they were used merely as collateral security. the transactions in
reality being loans and the employees being allowed to collect
their wages and pay as interest the discount mentioned in the
assignment, the transactions must be deemed loans and within
the usury laws, so, where defendant for a two weeks' loan of
twenty-five dollars received $1.75 interest, he was liable. (*Post,
pp.* 226, 227.)

Cases cited and approved: Gillespie v. State. 25 Tenn., 169; Murphy
v. State, 40 Tenn., 249; Swanson v. White, 24 Tenn.. 373; Weather-
head v. Boyers, 15 Tenn., 545; Wetmore v. Brien, 40 Tenn., 727.

3. **INDICTMENT AND INFORMATION.** Indictment charging usury
held specific as to time.

An indictment, charging that defendant on the —— day of July,
1919. before the finding of the indictment, did willfully receive

McWhite v. State.

by way of compensation for the use of $25 for a period of two weeks the sum of $1.75, etc., is sufficiently specific as to matter of time, and will support a conviction of usury. (*Post, p.* 227.)

Cases cited and approved: Gillespie v. State, 25 Tenn., 164; State v. Mitchell, 42 Tenn., 222.

4. **USURY.** Money lender not obtaining license cannot escape prosecution for usury on the ground that statute repealed the usury laws.

Where defendant made usurious loans secured by salary assignments, he cannot escape liability on the ground that Thompson's Shannon's Code, sections 6732, 6733, (relating to usury, where repealed by Acts 1917, chapter 62, relating to the lending of money on personal·property wages, or salary, it appearing that defendant did not obtain a license under the latter act so as to come within the terms of its protection. (*Post, pp.* 227, 228.)

Acts cited and construed: Acts 1917, ch. 62.

Code cited and construed: Secs. 6732, 6733 (T.-S.).

FROM SHELBY.

Appeal from the Criminal Court of Shelby County.— HON. T. W. HARSH, Judge.

ARTHUR C. FANT and JOHN D. MARTIN, for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was convicted of receiving usury, and has appealed in error to this court.

He was the manager of a concern in Memphis called the Shelby Brokerage Company, which had extensive dealings with railroad employees in that city.

The course of business followed by the brokerage company was this. Any one desiring to obtain money from it would make a written application to the Shelby Brokerage Company on a printed form to sell to it a stated amount of wages due to him. By another printed form executed by the applicant he would assign and transfer to the Shelby Brokerage Company the stipulated amount out of his wages, and direct his employer to pay to the Shelby Brokerage Company said amount. The application and the assignment both contained recitals to the effect that the transaction was not an advance or loan of money, but was an absolute and unconditional sale of the applicant's account against his employer to the amount mentioned. These papers also contained other representations which are not material to this inquiry.

The Shelby Brokerage Company had a fixed scale, which it charged proportioned to the amounts of money furnished. Its charge for $25 for two weeks was $1.75. That is, the applicant would receive $25, and would execute an assignment for $26.75.

The employees of the Yazoo & Mississippi Valley Railroad Company, of which Jones the prosecutor was one, would be paid on the 14th and 29th days of each month. On the 29th of each month they would be paid for services rendered prior to the 14th of the month, and on the 14th of the next month they would be paid for services rendered between the 14th and 29th days of the preceding month.

The railroad was therefore always two weeks in arrears with the pay of its employees.

Proof in this case shows that Jones did business with the concern of the plaintiff in error for quite a while. At the outset he executed one of these assignments for $26.75 and received $25. At the end of two weeks, or on the next pay day, he would draw his own pay check, go to the brokerage company, pay them $26.75, execute a new assignment for $26.75, and receive $25 back. This he did every two weeks, with a few exceptions, for more than a year. When he would fail to show up, the brokerage company would file the assignment executed by him with the railroad company, and thereby undertake to tie up Jones' pay.

Jones testifies that on one or more occasions he did not execute a new assignment at the end of two weeks, but merely paid to the brokerage company $1.75 for an extension for two weeks.

The custom of business of the brokerage company was shown. Although these assignments were absolute on their face, and apparently witnessed a completed transaction, as a matter of fact the brokerage company rarely ever filed the assignment with the railroad company, and drew the pay of the employee directly. The brokerage company permitted and expected its customers to draw their own pay as a rule, notwithstanding the assignment, and to come around and pay off themselves, or pay the schedule rate for another assignment and execute new documents.

On the papers such a transaction is not a loan. It is an assignment of wages which has been upheld by this

court. *Spicer* v. *King Bros. & Co.,* 136 Tenn., 413, 189 S. W., 865.

As a matter of fact, however, we think the jury were fully justified in concluding that the real transaction was a loan, and that the assignment was a device to cover up the loan. From the foregoing it is obvious that these assignments were not taken with the idea of enforcing them, except as a last resort. They were not presented to the railroad company generally on the next pay day, but the employees were permitted to draw such amounts as were due them, and the employees were trusted to get their money and come around and settle with the brokerage company. The assignment was obviously taken as a security for the money advanced, and as something to be held over a customer who did not make prompt settlement.

If the written assignment had represented the entire transaction, the brokerage company would naturally have filed it with the railroad company, drawn the money assigned, and the matter would have been closed. The brokerage company, however, as we have seen, rarely attempted to enforce its rights as assignee, but, on the contrary, in nearly all cases, permitted the employee to disregard the assignment and trusted to him to return the money advanced.

We think this is clearly an extension of credit, an advance, or loan, to the employee, with the assignment held over the employee as a sort of club or collateral security.

It is well settled by our cases that in all transactions of this character the court will disregard the form of the

matter, and will look to its real substance. *Gillespie* v. *State,* 6 Humph., 169; *Murphy* v. *State,* 3 Head., 249; *Swanson* v. *White,* 5 Humph., 373; *Weatherhead* v. *Boyers,* 7 Yerg., 545; *Wetmore* v. *Brien,* 3 Head, 727.

Lord Mansfield, in discussing the usury statute many years ago, and referring to a transaction before him said: "Where the real truth is a loan of money, the wit of man cannot find a shift to take it out of the statute." *Floyer* v. *Edwards,* Cowp., 112.

The courts have administered the usury laws constantly with this idea in mind.

It is insisted for the plaintiff in error that the indictment herein is not specific enough as to the matter of time, and that it should have been quashed on the motion below. We think this argument is not well taken. The indictment charges that A. P. McWhite "on the ———— day of July, A. D. 1919, before the finding of this indictment in the county aforesaid, did wilfully receive, by way of compensation for the use of money, to-wit, for the use of $25 for a period of two weeks, the sum of $1.75 and interest," etc. This indictment is sufficient, under *Gillespie* v. *State,* 6 Humph., 164; .*State* v. *Mitchell,* 2 Cold.,. 222.

It is furthermore contended on behalf of plaintiff in error that the usury statutes (sections 6732, 6733, Thompson's Shannon's Code) were repealed by implication by chapter 62 of the Acts of 1917, regulating the business of lending money on personal property, wages, or salary. It is not necessary to discuss this contention, for the plaintiff

in error disclaims being a lender of money, and testifies that he has not taken out a license required by chapter 62 of the Acts of 1917. The latter act, therefore, would furnish no protection for him, since he has not complied with its terms. The act of 1917 at most could only be held to repeal the usury laws with reference to the operation of lenders of money duly licensed according to the provisions of the act of 1917.

Numerous other assignments of error are interposed. We have considered all of them, and discussed them orally. It would prolong this opinion too much to go over all this ground here. These assignments are all sufficiently answered in the brief filed by the Assistant Attorney General.

It results that we find no error in the judgment below and it will be affirmed.