## TENNESSEE FINANCE CO. v. THOMPSON.

## In re MOSELEY.

### (Circuit Court of Appeals, Sixth Circuit.   February 7, 1922.)

### No. 3621.

1. **Bankruptcy ⬉440—Claim of forfeiture of assignment of wages because of usury presents "controversy arising in bankruptcy."**

   A petition by the trustee in bankruptcy, setting forth a claim to wages earned by the bankrupt under an assignment of such wages, which the trustee alleged was void, because an evasion of the usury statute, presents a "controversy arising in bankruptcy," reviewable by appeal.

   [Ed. Note.—For other definitions, see Words and Phrases. First and Second Series, Controversy Arising in Bankruptcy Proceedings.]

2. **Usury ⬉18—Nature and not form is considered.**

   In determining whether a transaction whereby an employee assigned his wages to another was void for usury, under Shannon's Code Tenn. § 3522a21, or sustainable as a bona fide sale of wages, the real nature of the transaction is to be considered, and not the form adopted by the parties, and the nature of the transaction is a question of fact.

3. **Bankruptcy ⬉467—Findings of referee, affirmed by District Judge, not set aside, except for plain mistake.**

   A finding by the referee in bankruptcy, affirmed by the District Judge, will not be set aside on appeal, on anything less than a demonstration of plain mistake.

4. **Usury ⬉117—Evidence held to sustain finding assignment was usurious loan.**

   Evidence *held* to sustain the finding of the referee in bankruptcy, confirmed by the District Court, that an assignment of wages by the bankrupt, which in form was an absolute sale thereof for cash, was in fact intended by the parties as a loan at a rate of interest exceeding that permitted by Shannon's Code Tenn. § 3522a21.

5. **Bankruptcy ⬉314(3)—Usurious claim is void as to all genuine creditors.**

   A usurious claim is void as to all genuine creditors, so that the trustee in bankruptcy, in seeking to avoid such claim, need not show that he represented creditors whose claims antedated the claim in controversy.

6. **Bankruptcy ⬉467—Petition for rehearing is addressed to District Court's discretion.**

   A petition for rehearing of a claim in bankruptcy, which amounted to no more than a request for reargument or reconsideration, was addressed to the discretion of a District Judge, and is not reviewable.

Appeal from the District Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

In the matter of the estate of Frank G. Moseley, bankrupt. Petition by Robert W. Thompson, as trustee in bankruptcy, against the Tennessee Finance Company and others, to have determined the right of the respondents to the wages earned by the bankrupt, under assignment of such wages. From an order denying the right of respondents to the earned wages, the named respondent appeals. Affirmed.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. C. Boyce, of Nashville, Tenn., for appellant.

Bass & Sims and Byrd Douglas, both of Nashville, Tenn., for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge.   At the time of bankruptcy the Nashville Terminals owed the bankrupt a sum of money as wages earned by the bankrupt as its employee.  The bankrupt had assigned specific portions of this indebtedness to each of three companies, styling themselves, respectively, as a "finance company," a "brokerage company," and a "trading company."  The indebtedness from the Terminals Company was scheduled among the bankrupt's assets.  The three companies named were scheduled as unsecured creditors.  The trustee obtained from the Terminals Company the wages in question, with notice of the assignments, and three days after the adjudication filed his petition, stating in general terms the situation referred to, and that the three companies claimed title under written instruments purporting on their face to be unconditional sales or assignments of wages or salary, but that all were "mere devices to evade the usury statutes," and the so-called sales "mere shams and frauds, intended only to cover up the loan of moneys at usurious rates of interest"—both principal and interest being thus forfeited to the borrower under the laws of Tennessee.  Such forfeiture, in case of interest charged in excess of 6 per cent. per annum, is created by section 3522a21 of Shannon's Tennessee Code of 1917.

The Tennessee Finance Company answered, denying that its transaction was a loan or device to evade the usury statutes, and asserting it a good-faith purchase of such wages to the extent of $22, for a cash consideration of $20, paid the bankrupt therefor.[1]  After hearing upon pleadings, oral proof, and arguments of counsel, the referee found that the assignment of wages in question was "merely a colorable scheme for the purpose of loaning money at a usurious rate of interest," and so declared the funds in question subject to the payment of the common creditors of the bankrupt.  In his certificate on review the referee summarized the evidence as to the method of business "usually followed by these brokerage companies" substantially thus:

One wishing to obtain money made application in writing on a printed form, which purported to be an application to sell his wages to such company;  the applicant, on another printed form, consented to assign to such company a stipulated amount of his earned wages, and instructed his employer to pay to such company the amount set out in the assignment.  It was specifically stated, throughout the papers in question, that the "transaction was not a loan, but a conditional sale of the bankrupt's wages, to the extent set out in said assignment or transaction."  The companies charged $1 for the use of $10, and $2 where the wages amounted to $20, and a similar ratio for sums above that amount.  The Terminals Company paid off twice a month.  The

---

[1] As the other two companies have not appealed, their pleadings are omitted from the record.

almost invariable practice was for the bankrupt to draw the money and himself pay his debts to the brokerage companies. Since January 29, 1921, the Tennessee Finance Company filed notice of assignment with the employing company, but not before that date. Should the bankrupt refuse or fail to pay his debt after drawing his pay, the Terminal Company was notified not to pay him his next pay check, and the same would be tied up until the controversy was settled. It was a common custom for the bankrupt to make a new contract at the time of paying his then existing debt.

The District Judge held the controlling question to be one of fact, viz. whether the assignments of wages were in fact absolute sales as purported on their face, or whether they were loans, and the assignment a device to cover up loans at usurious interest rates. The court held the referee's conclusion to accord with the greater weight of the evidence, and so affirmed the referee's order.

[1] The case presents a controversy arising in bankruptcy, and is properly before us on appeal. National Discount Co. v. Evans (C. C. A. 6) 272 Fed. 570, 573. The question of jurisdiction to determine the controversy arising under adverse claims was specifically waived below.

[2] In our opinion the conclusion that the transaction was usurious, and that the form of sale was adopted merely to evade the usury laws, should be sustained. The section we have cited is a part of the so-called "Loan Shark Act," being chapter 31a of the Tennessee Code of 1917. It is the settled construction of this statute, that the courts will look through the forms adopted, and will ascertain from the evidence generally the real nature of the transaction, whether one of good-faith sale or of loan at usurious interest, and that this question is purely one of fact. McWhite v. State, 143 Tenn. 222, 225, et seq., 226 S. W. 542;[2] Nashville Terminals v. Tennessee Finance Co., decided by the Tennessee Court of Civil Appeals, November 27, 1920 (not reported); Id., decision by the Supreme Court of Tennessee, January 29, 1921 (not reported).

If the finding of facts below is to be accepted, the order made was correct. McWhite v. State, supra, is directly in point. We find nothing conflicting with this proposition in either of the Tennessee decisions cited in which a contrary conclusion was reached on the facts,[3] nor in the previous case of Spicer v. King, 136 Tenn. 413, 189 S. W. 865, referred to in the McWhite Case, supra, 143 Tenn. at pages 225, 226,

[2] This case was a criminal prosecution for the violation of the criminal statute relating to usury (being section 6732 of Shannon's Tennessee Code of 1917), upon a state of facts generally similar to that found by the referee in the instant case. It was held that "the jury were fully justified in concluding that the real transaction was a loan, and that the assignment was a device to cover up the loan."

[3] In Nashville Terminals v. Tennessee Finance Co., supra, in which the transaction was sustained as a sale, the decision of the Court of Civil Appeals is based on the proposition that the findings of fact by the Circuit Judge are sustained where there is any material evidence to sustain them, as in the case of verdict by jury, and that of the Supreme Court of Tennessee on the ground that that court is, by the concurrent judgment of the Circuit Judge and the Court of Civil Appeals, barred from further considering the facts.

226 S. W. 542. Our conclusion is also supported generally by Home Bond Co. v. McChesney, 239 U. S. 568, 36 Sup. Ct. 170, 60 L. Ed. 444, and National Discount Co. v. Evans, supra, 272 Fed. at pages 573, 574, each of which cases involved usury statutes of states other than Tennessee.

[3] We accept the finding of facts made below. It is the settled rule in this court that a finding by a referee in bankruptcy, affirmed by the District Judge, will not be set aside on appeal on anything less than a demonstration of plain mistake. Ohio Valley Bank Co. v. Mack, 163 Fed. 155, 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184; In re Sweeney, 168 Fed. 612, 615, 94 C. C. A. 90; Deupree v. Watson, 216 Fed. 483, 485, 132 C. C. A. 543. Such is also the rule in case of concurrent findings of master and judge. Firestone Co. v. Riverside Co. (C. C. A. 6) 247 Fed. 625, 160 C..C. A. 35, and cases cited. There is, to say the least, no such demonstration of mistake.

[4] The only oral testimony was that of the bankrupt. His testimony, fairly construed, was to the effect that the same course of practice was pursued by him in dealing with each of the three companies in question; that when he got $20 he "got it for two weeks, and paid $22 for it"; that he obtained the money in question from appellant on the same terms, getting it "under the condition that I was to pay back every two weeks," that is to say, that in the case of all three companies the transaction could be extended every two weeks by his drawing his pay check and then paying them the amount of the loan plus the charge therefor (10 per cent. for two weeks' use), and again drawing the original amount, and so on; and that when he made his payment he was asked if he wished to use it again at the same rate. He testified explicitly that the three transactions in question "were for borrowed money." The effect of this testimony is not overthrown by the fact that on cross-examination he testified that the written documents represented the real transaction between him and appellant, and that the transaction immediately in question (which was on January 26, 1921) was the first he had had with appellant since August 8th previous, and that in his transactions with appellant and others each payment closed the previous transaction, and the question of whether he wanted to renew was not taken up until such closing. The method was consistent with an attempt to cover up an usurious contract of loan. The cross-examination did not neutralize the examination in chief. It went to its credibility. We think the examination, considered as a whole, and including the re-examination (and especially in the absence of oral testimony opposing it), was sufficient, if believed, to sustain the conclusions reached by the referee and the District Judge.

The question whether appellant gave the Terminals Company the statutory notice to perfect its claimed title is not of great importance. Not only is it not clear that such notice was given in this case previous to bankruptcy, but the giving or failure to give notice is significant only as it affects the question of the real nature of the transaction; and it appears that such notice was never given by appellant until after the decision in the McWhite Case, supra, which was less than a

month before Moseley's bankruptcy.[4] Nor is the conclusion of the District Judge discredited by his holding that the findings of the referee were presumptively correct. The District Judge did not content himself with this presumption, but held the referee's conclusion to be "in accordance with the greater weight of the evidence."

[5, 6] There is no force in the suggestion that it does not appear that the trustee represented creditors whose claims antedated that of appellant. Martin v. Bank, 245 U. S. 513, 38 Sup. Ct. 176, 62 L. Ed. 441, is not in point. If appellant's claim is usurious, it was void as to all genuine creditors. It scarcely need be said that the petition for rehearing (which amounted to no more than a request for reargument or reconsideration) was addressed merely to the discretion of the District Judge, and is not reviewable.

The order of the District Court is affirmed.

---

[4] The McWhite decision seems to have been rendered January 15, 1921, instead of January 29th, as the referee evidently had in mind in stating the date when appellant began filing notice of assignment.