57 So.2d 556

## STATE v. BRAGG.
### 4 Div. 180.

Court of Appeals of Alabama.
June 29, 1951.

Rehearing Denied Aug. 2, 1951.

Affirmed on Mandate March 13, 1952.

Si Garrett, Atty. Gen., and H. Grady Til-ler and Wm. H. Burton, Jr., Asst. Attys. Gen., for appellant.

J. C. Fleming, Elba, for appellee.

CARR, Presiding Judge.

The State of Alabama brought suit against Dr. E. G. Bragg to recover licens-es claimed to be due under the provisions of Section 495(2), Title 51, Code of 1940, for the fiscal years of 1944 to 1949 inclusive.

The section provides: "Each person engaging in business of lending money on salaries or making industrial or personal loans shall pay an annual license of one hundred dollars for each county in which they engage in business."

In the circuit court there were a verdict and judgment in favor of the defendant.

The State filed a motion for a new trial. This was overruled.

The question of critical concern is whether or not Dr. Bragg, during the time involved, was engaged in the business of making personal loans in such manner and under such circumstances as to be required to pay the license demanded by the above statute.

The appellee devoted a major portion of his time to the duties incident to his medical profession. It appears that he had large farming and cattle raising interests. During a part, if not all, of the time in question, he operated thirty-six plows by tenant farmers. He had substantial interests in an insurance business and a real estate agency in Elba, Alabama. In addition to these business enterprises and connections, he loaned each year large sums of money, taking as security mortgages on real and personal property.

We will catalogue the personal property mortgage loans as they appear of record in the office of the Probate Judge of Coffee County:

The delineated years include the period from October 1st to the following September 30th.

| | | |
|---|---|---|
| 1944–45 | 47 loans, totaling | $21,709.92 |
| 1945–46 | 46 loans, totaling | 21,830.31 |
| 1946–47 | 53 loans, totaling | 29,219.84 |
| 1947–48 | 49 loans, totaling | 36,711.40 |
| 1948–49 | 64 loans, totaling | 34,045.71 |

On each of the above loans a charge of eight per centum per annum was made.

It is impracticable, of course, to analyze each of the above indicated transactions. They may be classified in a general way as follows: A comparatively small number were loans to appellee's tenants for advances. Some were mortgages given to secure the purchase price of personal property which was sold by the appellee to the mortgagor. Some of the mortgages were given in connection with real estate loans. A number were renewals or extensions of prior indebtednesses. About one-fourth were given for the purchase of fertilizer.

It is fairly accurate to state that during each year in question Dr. Bragg made an average of about eight straight-out loans. That is to say, loans in which the sale of property or advances to tenants were in no manner involved.

Dr. Bragg had an arrangement or agreement with a fertilizer manufacturing company in Troy, Alabama, under which, on the doctor's order, the plant would deliver fertilizer to the appellee's customers. Dr. Bragg would settle with the fertilizer company directly and take a mortgage on the personal property of the customers for the sale price of the fertilizer.

It is important to note, however, that in a majority of the loans of this character Dr. Bragg would advance a substantial additional sum of money to the purchaser of the fertilizer. The total of the two items made the principal of the loan indebtedness.

We think that the nature and character of these various transactions and the over-all manner in which the appellee conducted his loan business are fairly illustrated in his statement which appears as a part of his testimony. It is: "Those people live there close to my place, and it is just natural when they get in a little tight for extra money they would go down to see me; and I don't usually take up their time to ask what they are going to buy with it or what they are going to use it for, just so they put up the security."

We have herein delineated the factual background in rather general terms, but it will serve the purpose of this review.

Black's Law Dictionary, 3rd Ed., defines "engage" as follows: "To employ or involve one's self; to take part in; to embark on."

See also 14A Words & Phrases, 188.

1 Bouvier's Law Dict., Rawle's Third Revision, page 406, defines "business" as follows: "That which occupies the time, attention, and labor of men for the purpose of livelihood or profit, but it is not necessary that it should be the sole occupation or employment."

In Abel v. State, 90 Ala. 631, 8 So. 760, our Supreme Court made this observation: "To 'engage in or carry on business' has been uniformly construed as signifying 'that which occupies the time, attention, and labor of men, for the purpose of a livelihood or profit.' 'It is the business, the occupation, or profession on which the law imposes the tax.' It has been held that the doing of a single act, pertaining to a particular business, will not be considered engaging in or carrying on the business, yet a series of such acts would be so considered. Lemons v. State, 50 Ala. 130."

See also Dentler v. State, 112 Ala. 70, 20 So. 592; Bankers & Shippers Ins. Co. of New York v. Blackwell, 255 Ala. 360, 51 So.2d 498; Vandalia R. Co. v. Stilwell, 181 Ind. 267, 104 N.E. 289.

In applying license laws our Supreme Court has held that it is not required that the business be the sole or exclusive occupation of the person sought to be taxed. It may be pursued along with or in connection with other businesses or employment. Harris v. State, 50 Ala. 127; Grant v. State, 73 Ala. 13; Rice v. Garnett, 17 Ala.App. 239, 84 So. 557.

In this aspect the intent of the legislature was clearly indicated and disclosed by the enactment of Section 838, Title 51, Code 1940: "Where any person, firm or corporation is engaged in more than one business which is made by the provisions of law subject to taxation, such incorporated company or person shall pay the tax provided by law on each branch of the business."

See also Pate v. State, 243 Ala. 44, 8 So. 2d 516.

■ The intent of the person sought to be affected by the license law is a material inquiry. Weil v. State, 52 Ala. 19; Keller v. State, 123 Ala. 94, 26 So. 323.

In the case of McWhite v. State, 143 Tenn. 222, 226 S.W. 542, the Tennessee Supreme Court held in effect that, in determining whether a transaction is an assignment of wages or a loan of money, the court would disregard the form and look to the real substance.

See also State ex rel. Ormes v. Tennessee Finance Co., 152 Tenn. 40, 269 S.W. 3.

The evidence in the case at bar is without dispute in so far as it relates to the matter of the character of the various loan transactions.

It is manifest that the appellee was conducting his loan activities on a *very* large scale and was receiving substantial income from the undertaking.

In many instances he made straight-out loans and in many others he advanced money over and above the amount of the purchase price of the articles sold the lendee.

■ The license law is directed at the business. The nature and character of the conduct and operation of the business fix the status and determine the liability.

■ We are compelled to the view that the great preponderance of the evidence leads to the inevitable conclusion that the appellee was engaged in the business of making personal loans within the purview of Section 495(2), Title 51, supra.

■ It follows that we must base error on the failure of the lower court to grant the motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738; American Life Ins. Co. v. Anderson, 246 Ala. 588, 21 So. 2d 791.

There are other questions presented for our consideration. We will pretermit any discussion of these in view of the conclusion we have reached.

The judgment below is ordered reversed and the cause remanded.

Reversed and remanded.

## On Rehearing

In our original opinion we stated: "He (Dr. Bragg) had substantial interests in an insurance business and a real estate agency in Elba, Alabama."

In brief on application for rehearing the accuracy of this statement is questioned. Counsel states: " * * * there is not one word of testimony in the whole record that Dr. Bragg owned a real estate agency in Elba, Alabama, or that he was a stockholder in a real estate agency in Elba, Alabama."

■ We found authority for our assertion in brief of appellant's counsel. The correctness of the statement in brief was not denied or controverted by appellee's attorney. Supreme Court Rule 10, Title 7 Appendix, Code 1940.

This aside, the observation, which we have quoted supra from our opinion, is without material significance and bears no important relation to the questions we were called upon to decide. We were merely attempting to give a general background of Dr. Bragg's business activities.

To respond further to the application for rehearing would result in a rediscussion of the questions we treated in our original opinion.

The application for rehearing is overruled.

PER CURIAM.

Affirmed on authority of State v. Bragg, 257 Ala. 13, 57 So.2d 559.