884 So.2d 855 (2003)
Katherine H. PIERCE
v.
John Charles PIERCE.
2010940.
Court of Civil Appeals of Alabama.
July 11, 2003.
Rehearing Denied September 26, 2003.
*856 Kenneth A. Nixon and William E. Shreve, Jr., of Lyons, Pipes & Cook, P.C., Mobile; and Mary Dixon Torbert, Montgomery, for appellant.
Charles A. Dodson, Jr., and Joseph D. Steadman of Sims, Graddick & Dodson, P.C., Mobile, for appellee.
YATES, Presiding Judge.
This is a child-custody-modification case.
Katherine H. Pierce ("the mother") and John Charles Pierce ("the father") were married on August 10, 1991. Two children, twins, were born of the marriage on June 3, 1998. The family resided in Mobile County. The trial court divorced the parties on July 25, 2000. The divorce judgment incorporated the terms of the parties' settlement agreement and, among other things, awarded the parties joint legal custody of the children; awarded the mother primary physical custody of the children; and granted the father visitation rights. The judgment also stated, in part:
"3. The parties agree that it is their present intent to reside in Mobile, Alabama. If for any reason, either of the parties decides to relocate their residence outside of Mobile County, Alabama and such relocation is challenged or results in a custody challenge by the other party hereto, the parties agree that such challenge shall be determined by applying the `best interests of the children' standard and not under the `material change in circumstances' or [Ex Parte] McLendon [, 455 So.2d 863 (Ala.1984),] standard."
In August 2001, the mother moved to Chattanooga, Tennessee, with the children. On August 28, 2001, the father petitioned to modify custody contending, among other things, that:
"4. The Mother has recently advised the Father that she intends to seek and accept a voluntary transfer of her present job, as a staff attorney with the Social Security Administration Office of Hearings and Appeals, in Mobile, Alabama to the Social Security Administration *857 Office of Hearings and Appeals in Chattanooga, Tennessee. She intends to relocate to the State of Tennessee and take the two minor children with her.
"5. The Father challenges the relocation of his children for a number of reasons. He maintains that this relocation is a material change in circumstances, sufficient to justify a modification of custody and that such a move is clearly not in the best interests of his children. The move, 400 miles from Mobile, away from the Father and their extended family, would disrupt and would conceivably end the established, ongoing and frequent relationship the children have with their Father and their extended family; it would disrupt their established day care; it would require a complete reworking of the custodial arrangements between the Father and the Mother and necessarily end the liberal and flexible visitation practices between the parties which is beneficial to the children; it would place undue stress on the relationship between the Father and the Mother which would inure to the detriment of the children; it would place the children in a new and unknown environment, an environment which is hostile to the Father.
"6. The Father avers that relocating the children to Chattanooga, Tennessee is not in the children's best interest as it will cause irreparable harm to his relationship with them as they will not only be separated by great geographic distance, but as the Mother's family will not facilitate and will likely discourage contact between the children and their Father as borne out over the past year.
"7. The Mother's planned moved to Chattanooga is not mandated by her employment, as she is an employee in good standing with the Social Security Administration and intends to merely seek a voluntary inter office transfer. This is a voluntary move, motivated solely by the Mother's own caprice without regard for the best interests of the children or their relationship with their Father and their extended family in Mobile. The Father is an established partner in a local law firm with no such opportunity to move his practice.
"8. Designation of the Father as primary physical custodian, or, alternatively, sole custodian, of the minor children will ensure their continued residence in Mobile, Alabama; will ensure their continued and systematic contacts with the Father, his family, the children's daytime care givers, and the environment, surroundings, activities, homes and neighborhoods in which they have lived.
"9. Moreover, upon information and belief, if the Father is granted Primary Physical Custody of the Children, the Mother will not relocate to Chattanooga, Tennessee, but will continue to reside in Mobile, Alabama, thereby ensuring continued contact with both parents and both extended families....
"10. The Father avers that, even if the stipulated `best interests' standard is not applied and the McLendon standard is applied, such an uprooting of the children would constitute a material change in circumstances sufficient to justify a change in custody."
The father also filed on August 28, 2001, an instanter motion for an order to maintain the status quo as to custody of the children and to restrain the mother from transferring the children from Mobile County.
Following an ore tenus proceeding, the trial court, on March 18, 2002, entered an order granting the father's petition and awarding him primary physical custody of the children, with liberal visitation to the mother. The trial court did not indicate in *858 its order whether it had applied the "best-interests" standard, see Ex parte Couch, 521 So.2d 987 (Ala.1988), or the more stringent standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
On April, 16, 2002, the mother moved the court to alter, amend, or vacate its judgment pursuant to Rule 59, Ala. R. Civ. P., arguing, among other things, that:
"4. The [mother] avers that during the course of the trial the [father] testified that he was not seeking sole custody of the minor children, rather he was only requesting that the [mother] and the minor children be prevented from moving to Chattanooga, Tennessee.
"5. The [mother] testified that she had accepted a job promotion which would require her to move to Chattanooga, Tennessee. However, she also testified that she would remain in Mobile County with her children if the Court found that it would not be in the best interest of the minor children for her to move.
"6. The [mother] avers that the undisputed testimony from all witnesses, including the [father], reflected that the [mother] was a good mother and that she enjoyed a loving relationship with the minor children....
"7. The [mother] avers that the only change in circumstances since the date of the divorce that was alleged or proven was the fact of the [mother's] intent to move to Tennessee.
"8. Since the rendition of the Court's order dated March 18, 2002, the [mother] has resigned her promoted position and has regained her job with the Social Security Office in Mobile, Alabama, and is residing in Mobile, Alabama.
"....
"10. The [mother] avers that the circumstances of the parties is now the same as it was prior to the filing of the Motion to Modify in that the [mother] is living in the same location and working at the same job."
The mother sought an order from the trial court vacating its order of March 18, 2002, and reinstating the custodial provisions contained in the original divorce judgment. The trial court, after a hearing, denied the mother's postjudgment motion; the mother appeals.
The mother argues, among other things, that the trial court abused its discretion in denying her postjudgment motion, because, she says, there existed no change in circumstances to warrant a custody modification because she had abandoned her plans to move to Chattanooga and she was no longer relocating from Mobile. "Our review of the denial of a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate a judgment is ' "limited to whether the trial court abused its discretion."'" Chapman v. Surles, 719 So.2d 846, 846 (Ala.Civ.App.1998) (citations omitted).
Both the mother and the father are attorneys. At the time the father filed his petition, the mother was employed by the Social Security Administration's Office of Hearings and Appeals in Mobile. The father was practicing law as a partner in a local law firm. In July 2001, the mother learned of an opening in the Chattanooga, Tennessee, Office of Hearings and Appeals and decided to move to Chattanooga[1] with the children and to apply for the job. The open position would have been a promotion *859 for the mother. The mother notified the father at the end of July 2001 of her intentions to move to Chattanooga with the children. The mother moved to Chattanooga with the children on August 27, 2001; however, she returned to Mobile on September 10, 2001, after the father had filed his petition. The mother was notified on December 27, 2001, that she had received the promotion; she officially transferred to the Chattanooga office on February 11, 2002.
The father testified at the hearing as follows:
"Q. What are you asking the judge to do?
"A. To let me play a part in my children's lives by keeping them here. My ideal relationship with my children would best be fostered by maintaining what we have now. Status quo is a good situation. That's what's in the best interest of these children....
"Q. You're not trying to take the children away from [the mother]?
"A. Absolutely not.
"Q. You're asking the Court to allow you to have the children, or allow her to stay here and have the children; is that correct?
"A. Yes sir. That is absolutely correct."
The mother testified at the hearing that she had returned to Mobile after the father had filed his petition. She testified that, at the time of the hearing, she was renting a house in Mobile and that if custody of the children was awarded to the father she would stay in Mobile. As mentioned above, the mother alleged in her postjudgment motion that, since the trial court had entered its order changing custody of the children to the father, she had resigned her promoted position in Chattanooga and had regained her former position with the Social Security Administration in Mobile. She reiterated this assertion in her brief on appeal. The father has not disputed this assertion. See State v. Bragg, 36 Ala.App. 430, 57 So.2d 556 (1951) (accepting as true uncontroverted factual statement in appellant's brief).
After reviewing the record in this case, we conclude that because any possible justification for modification no longer existed, the trial court abused its discretion in denying the mother's Rule 59(e) motion and in failing to vacate its judgment modifying custody. Therefore, we reverse the trial court's judgment denying the mother's Rule 59 motion, and we remand this case for the trial court to enter an order consistent with this opinion. Because of our resolution of this issue, we do not address the mother's other arguments.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, and MURDOCK, JJ., concur in the result.
PITTMAN, J., recuses himself.
THOMPSON, Judge, concurring in the result.
Because I would have reversed the trial court on other grounds, I concur in the result of the main opinion.
Alabama law is clear that when there has been a prior custody determination, the parent seeking a change in custody must meet the strict standard set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984). That standard requires that a change in custody must materially promote the best interest and general welfare of the child and that the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. West v. Rambo, 786 So.2d 1138 (Ala.Civ.App.2000); see also Ex parte *860 McLendon. It is the child's best interest that is sought to be protected by the application of the McLendon standard in a custody determination; that standard is not for the benefit or the convenience of the child's parents. A.L. v. S.J., 827 So.2d 828 (Ala.Civ.App.2002). This court has held that parties are not at liberty to forego the protection of the law by either agreement or contract where a principle of public policy is violated. Kennedy v. Cochran, 475 So.2d 872 (Ala.Civ.App.1985). The McLendon standard is based on strong policy considerations; among those considerations is preventing the trauma of uprooting a child from a familiar home. Ex parte Couch, 521 So.2d 987 (Ala.1988).
Because the McLendon standard serves the interest of the child and not the parents, the parties were not at liberty to contract out of the protection afforded the child under Ex parte McLendon. Therefore, the proper standard of proof in this case is the McLendon standard. In my opinion, the father did not meet the "heavy burden of proof" set forth in Ex parte McLendon, supra. A.L. v. S.J., 827 So.2d 828, 834 (Ala.Civ.App.2002).
NOTES
[1] The mother was raised in a suburb of Chattanooga and her parents, as well as other extended family, continue to reside there. The record indicates that the mother and the children enjoy an excellent relationship with the maternal grandparents and that the children had spent extended periods of time with the maternal grandparents.