## DEUPREE v. WATSON.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1914.)

No. 2457.

1. BANKRUPTCY (§ 467*)—APPEAL—FINDINGS—REVIEW.
   A finding by a referee in bankruptcy affirmed by the district judge will not be set aside on appeal on anything less than a demonstration of plain mistake.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 929; Dec. Dig. § 467.*
   Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 303*)—MORTGAGES—FRAUD.
   Evidence *held* insufficient to show that a mortgage executed by the bankrupt to his mother was fraudulent in whole or in part or had been withheld from record in order to give the bankrupt an unwarranted credit or to defraud subsequent creditors.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

3. MORTGAGES (§ 175*)—LIENS—PRIORITIES—FAILURE TO RECORD—NOTICE.
   Ky. St. 1903, § 496, provides that no deed, deed of trust, or mortgage shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record. *Held*, that under such statute a mortgage duly executed and delivered for a valid consideration is good as between the parties though not recorded, and also as against creditors taking with notice and subsequent creditors who have not obtained a lien on the property.
   [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 175.*]

4. BANKRUPTCY (§ 184*)—LIENS—UNRECORDED MORTGAGE—VALIDITY—STATE LAW.

Whether an unrecorded mortgage executed by the bankrupt is invalid as against the bankrupt's trustee under Bankr. Act July 1, 1898, c. 541, § 67a, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), providing that claims which for want of record or for other reasons would not have been valid liens as against claims of the creditors of the bankrupt shall not be liens against his estate, depends on the effect of the recording law of the state.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

5. BANKRUPTCY (§ 184*)—UNRECORDED MORTGAGES—PRIORITY.

Bankr. Act July 1, 1898, c. 541, § 47, cl. 2, subd. "a," 30 Stat. 557. (U. S. Comp. St. 1901, p. 3438), as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (U. S. Comp. St. Supp. 1911, p. 1500), provides that trustees in bankruptcy as to all property in the custody or coming into the custody of the bankruptcy courts shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings, and, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. Held, that a mortgage executed and delivered in Kentucky in good faith and for a valid consideration prior to the date of the amendment, and recorded afterwards but before the petition in bankruptcy against the mortgagor was filed, was not subordinate to the claims of judgment creditors who became such subsequent to the execution of the mortgage and before it was recorded.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

6. BANKRUPTCY (§ 161*)—MORTGAGES—RECORD—PREFERENCES.

Where a mortgage was executed by a bankrupt more than four months prior to the institution of bankruptcy proceedings and was valid under the state law except as against subsequent creditors who had acquired a lien and equally valid against the bankrupt's trustee, representing no such creditors, though not recorded until less than four months prior to bankruptcy, the date of record could not be regarded as the date of execution for the purpose of determining the four months' period in order that it might be declared a voidable preference under Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1911, p. 1506).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Action by William J. Deupree, trustee in bankruptcy of Luther B. Watson, against Alice P. Watson. Judgment for defendant (201 Fed. 962), and plaintiff appeals. Affirmed.

F. W. Schmitz, of Covington, Ky., for appellant.
U. J. Howard, of Covington, Ky., for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge. The controversy in this case is between William J. Deupree, trustee in bankruptcy of Luther B. Watson, and Mrs. Watson, mother of the bankrupt, over a mortgage given

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by him to her, which was, by the District Court, awarded priority over the claims of unsecured subsequent creditors.

The mortgage is attacked on several grounds: That the debt is fraudulent in whole or in part; that the mortgage is in itself fraudulent; that it was withheld from record and became invalid under section 496 Kentucky Statutes (1903), as against subsequent creditors without notice of its existence; that it was withheld from record in order to enable the mortgagor to obtain credit, and that it constitutes a preference under sections 60a and 60b of the Bankruptcy Act of 1898 and the amendments of 1903 and 1910.

[1] The conflicting testimony was carefully weighed by the referee as shown by his report. He found the amount of the debt was as claimed by Mrs. Watson, that the mortgage itself was free from taint, and that it was withheld from record through no fraudulent reason. Judge Cochran weighed the testimony with even more than his usual painstaking and discrimination, and affirmed the judgment of the referee ([D. C.] 201 Fed. 962). Under these circumstances, this court would not be warranted in reaching a different conclusion "upon anything less than a demonstration of plain mistake." This rule is established and of frequent application in this court and elsewhere. Bank v. Mack, 163 Fed. 155, 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184; Wabash Ry. Co. v. Compton, 172 Fed. 17, 21, 96 C. C. A. 603; In re Holden, 203 Fed. 229, 232, 121 C. C. A. 435; 1 Loveland on Bankruptcy (4th Ed.) pages 225, 226. That demonstration is not forthcoming. On the contrary, the testimony fully justifies the conclusion reached by the district judge and the referee.

[2] Mrs. Watson, evidently a woman of considerable business experience and judgment, had carried on for many years a saloon business in Covington, Ky., on premises owned by her near the Latonia Race Track. Her husband kept the bar and she attended to the business transactions necessary to carry on that business. She and her husband spent in acquiring, and upon, the property as much as $18,000. She was the owner of other parcels of real estate and had maintained good credit. Her husband had died some little time prior to the transactions which give rise to this controversy and she had intermarried with one Wilson, from whom afterwards she was divorced and restored to her former name of Watson. Her son, Luther, the bankrupt, 23 years of age, enjoyed the confidence of his mother, and also of William Riedlin, president of the Bavarian Brewing Company, Covington. The fact that he was about to go into the saloon business near his mother's saloon caused negotiations between him and her in December, 1908, looking to the purchase by him of her saloon premises. For some time before he had been operating her saloon on his own account and had incurred an indebtedness to the Moerlein Brewing Company of Cincinnati of some $1,600, to secure which he had given chattel mortgages on saloon fixtures and chattels on the premises. He had been accustomed to purchase most of the beer used by him from that company, although he obtained a small part from the Bavarian Brewing Company. The purchase price agreed upon between him and his mother was $10,800, of which $4,000 was to

be paid in cash and the balance, $6,800, was evidenced by five promissory notes one payable each year, the first for $700 and each of the others for $1,525, to be secured by mortgage upon the premises.

Luther had been promised $4,500 by the Moerlein Brewing Company to assist in carrying through the transaction for which he was to give a mortgage. $500 of this he needed for improvements upon the premises and $4,000 to make the cash payment to his mother. In January, Mrs. Watson employed D. A. Glenn, a reputable lawyer of Covington, to prepare the necessary papers embracing a deed from Mrs. Watson to Luther, a mortgage to the Moerlein Brewing Company for $4,500, and the purchase-money mortgage for $6,800, referring specifically to the Moerlein mortgage to which it was subordinate. The deed was dated January 20, 1909; was acknowledged by her then husband, to whom it had been sent at Memphis for his signature; and was by her acknowledged February 15, 1909. It was delivered the next day.

Luther, being dissatisfied with the delay of the Moerlein Brewing Company in furnishing the $4,500, applied to Riedlin and obtained the money at the Farmers' & Traders' National Bank at Covington through the indorsement of Riedlin to whom, his wife joining, he executed a mortgage to secure that sum. One of the most convincing arguments for the bona fides of Mrs. Watson's mortgage is that, in the consummation of the transaction of sale, the fact that William Riedlin became the paramount mortgagee instead of the Moerlein Brewing Company, as had been expected, was overlooked, and the mortgage to Mrs. Watson, as originally drafted, remained unchanged.

Mrs. Watson being indebted for something more than $1,100 for improvements on the premises, the indebtedness was paid out of the $4,000, and she received a check from Luther on February 16, 1909, for the balance. The check was made the same day the deed was delivered, and Luther and his wife executed the mortgage for $6,800 and the notes which it secured. On that day Luther, Riedlin, and Theissen, a lawyer of Covington employed by Riedlin to examine the title to the property, met at the bank for the purpose of closing the negotiations for the loan of $4,500. Since the deed from Mrs. Watson to Luther recited a consideration of $1 and other considerations paid and to be paid, Mr. Theissen thought Mrs. Watson ought to be consulted. Her son called her over the telephone, or she called him. She complained that a transaction in which she was so vitally interested ought not be carried on unless she were represented. Riedlin then talked with her and told her a first mortgage was about to be given to him to secure the $4,500 and advised her not to put her mortgage on record as to do so would amount to "double taxation," in that the property was already assessed and her mortgage would be, if she put it on record. Glenn, her lawyer, also advised her not to put the mortgage on record.

After the purchase and apparently up to the time he left Covington in August, 1910, Luther carried on quite a large business, and in the spring of 1909, the exact date not being important, he paid the Riedlin mortgage from the proceeds of $6,000 borrowed on mortgage from a

bank, and discharged the Moerlein chattel mortgages. That mortgage, having been at once recorded, is conceded to be prior to Mrs. Watson's mortgage.

Through the Moerlein Brewing Company a saloon had been established in the neighborhood in competition with Luther's business and Riedlin loaned $1,900 (constituting his unsecured claim) to Luther for the purpose of constructing a bowling alley, better toilet facilities, and other improvements, so as to make his resort more attractive than it was. Luther, after becoming the owner of the saloon, bought all his beer from the Bavarian Brewing Company.

Luther, up to the time of abandoning his business in August, 1910, was apparently doing well, but was either unable to or had not paid Riedlin his $1,900 nor the Bavarian Brewing Company's debt of $3,041.22 owing it for beer. The claims of Riedlin and the brewing company constitute by far the greater part of Luther's unsecured indebtedness.

In August, 1910, Riedlin demanded of Luther a mortgage to secure the $1,900. Luther, realizing that injury might result to his mother, her mortgage not being recorded, declined to secure Riedlin, and appreciating his inability to pay him and the brewing company and his other creditors, he, without notifying his mother or any one, left home and obtained employment at Detroit, where he was living with his wife and children at the time his deposition was taken during the pendency of these proceedings. It is probable that he went away either because he was ashamed or afraid to meet his creditors, or was oppressed by the sense of failure and wanted to begin life over in another locality.

On August 13, 1910, Luther employed a lawyer to prepare a mortgage to his mother for $6,800 which he and his wife executed and left with the lawyer with directions to record the same. It was recorded on the 15th. After the 13th he went away but left a letter for his mother telling her of the execution of the mortgage. She did not know he intended to go away and had no knowledge of the execution of that mortgage until his letter told her of it. She did not know until the 16th that he had gone away and then put on record the mortgage of February 16, 1909, the mortgage in question in this case. Whatever may be the explanation of the mortgage of August 13, 1910, it is of no consequence now, since, under all the facts, it is established that the mortgage of February 16, 1909, was a valid mortgage given to secure $6,800 balance of purchase money represented by the five notes hereinbefore described.

On August 17, 1910, the day after Mrs. Watson recorded her mortgage, attachments were levied upon the real estate at the instance of the Bavarian Brewing Company and Riedlin for their claims and by three other creditors for claims amounting to $1,071.95.

August 26, 1910, involuntary proceedings in bankruptcy were instituted against Luther and he was adjudged a bankrupt on October 8th following.

The validity of the debt to Mrs. Watson and the mortgage to secure the same cannot be doubted. She withheld the mortgage from

record for, to her, and to many persons otherwise honest, laudable reasons, not in any event affecting her son's possible or probable prospective creditors. It was not withheld from record as the result of an agreement between herself and son. Her motives had to do with her own interests and had nothing to do with any possible effect upon her son's credit. It does not appear that any subsequent creditor gave credit to her son which would have been withheld had he known of the existence of her mortgage, while Riedlin and the brewing company knew of the mortgage and the reason why it was not recorded.

[3] It is not denied by the trustee, and it is without doubt the law (Crucible Steel Co. v. Holt, 174 Fed. 127, 129, 98 C. C. A. 101), that a mortgage in Kentucky duly executed and delivered upon a valid consideration is good as between the parties, though not recorded; and, since Mrs. Watson's conduct was free from fraud and no subsequent creditor deceived into giving credit to Luther, there is no basis for the claim that the mortgage was withheld from the record in order to enable him to obtain credit and this ground of attack must fail.

The Kentucky statute invoked by the trustee reads:

"No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proved according to law, and lodged for record." Kentucky Statutes 1903, § 496.

The fact that Riedlin and the brewing company had full notice and could take nothing under this statute may be overlooked in view of the comprehensive character of the trustee's duties, representing, as he does, all unsecured creditors.

[4] The Supreme Court of the United States in Holt v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756, in which the judgment of this court (174 Fed. 127, 98 C. C. A. 101) was affirmed, construing this section with section 67a of the Bankruptcy Act, reading "Claims which for want of record or for other reasons would not have been valid liens as against claims of the creditors of the bankrupt shall not be liens against his estate," were of opinion that the recording law of the state must determine the effect to be given an unrecorded chattel mortgage, and that, following the more recent decisions of the Court of Appeals of Kentucky, the word "creditors," in the statute under consideration, "does not include antecedent creditors or subsequent creditors whose claims are acquired with notice of the unrecorded mortgage, but does include subsequent creditors, without notice, who by their diligence secure a specific lien upon the property, as by execution or attachment, before the mortgage is recorded." And so it was held that, as the subsequent creditors in that case had not, prior to the bankruptcy proceedings, fastened any lien upon the property, the unrecorded mortgage was good as against them.

[5] But, it is urged, the trustee, for the purposes of his trust and in working out the rights of creditors, has such a lien by virtue of the provisions of the amendment of June 25, 1910, to section 47, cl. 2, subd. "a," of the Bankruptcy Act. This provides:

" * * * Such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the

rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatis- fied."

The date of the mortgage is February 16, 1909; the date of its record August 16, 1910.

This situation raises the question whether or not in Kentucky a mortgage executed and delivered in good faith and for a valid consideration prior to the date of the amendment, and recorded afterwards but before the petition in bankruptcy was filed, becomes subordinate to the claims of general creditors who became such subsequent to its execution and before it was recorded. The answer must be in the negative, because the Supreme Court denies to the amendment any retroactive effect (Holt v. Henley, Trustee, 232 U. S. 637, 639, 34 Sup. Ct. 459, 460, 58 L. Ed. 767); Mr. Justice Holmes saying:

"We do not need to consider whether or how far in any event the constitutional power of Congress would have been limited. It is enough that the reasonable and usual interpretation of such statutes is to confine their effect, so far as may be, to property rights established after they were passed."

The trustee takes nothing, as to any of his claims, by the amendments of 1910, and since Mrs. Watson's mortgage was effective against unsecured subsequent creditors without notice who had not fastened a lien upon the property, and, by recording, became "valid" under the Kentucky statute, the attachments subsequent to the date of record are futilities. It follows that the attack upon the mortgage based upon the Kentucky statute must fail.

[6] But counsel for the trustee contends with much earnestness that the mortgage is a voidable preference under sections 60a and 60b of the Bankruptcy Act, as amended in 1903, basing his argument on the claim that the date of recording fixes the time with respect to which the elements constituting a voidable preference are to be ascertained and determined. The proposition is that a purchase-money mortgage, although a security of high rank in equity, unimpeachable when made, and good as against the trustee in bankruptcy (York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782), and, under the laws of Kentucky (Holt v. Henley, 232 U. S. 637, 34 Sup. Ct. 459, 58 L. Ed. 767), good as against all persons becoming general creditors after its execution who have not fastened a lien upon the property, nevertheless changes its character at the date of recording and, by recording, becomes a voidable transfer under sections 60a and 60b of the Act of 1898 and the amendments of 1903. We cannot give our assent. The proposition is based upon an erroneous conception of the effect of the amendments of 1903 respecting the time of expiration of the four months' period within which a preferential transfer may be attacked.

The effect of the amendments of 1903, which control in this case, including the clause in 60a providing that where there is a preference, consisting of a transfer given within the four months before the filing of the petition in bankruptcy, "such period of four months shall not

expire until four months after the date of recording, or registering the transfer, if by law such recording or registering is required," has been heretofore decided by this court. In the case of In re Klein, 197 Fed. 241, 249, 116 C. C. A. 603, 611, it was said by Judge Sater, speaking for the court:

"The purpose of the amendment was, we think, as stated in Re Sturtevant, 188 Fed. 196, 110 C. C. A. 68 (7th Cir.), to prevent preferential fraudulent transfers from escaping the four months' provision, unless they were filed or recorded, as the case may be, before that period began to run. It did not change the date as to which such transfers are to be judged in determining their voidable character."

He quotes with approval what was said by Judge Cochran in Debus v. Yates (D. C.) 193 Fed. 447:

"It simply prolonged the time in which, by the filing of a petition in bankruptcy, a recordable preferential transfer might be deemed to be a voidable preference. It had nothing whatever to do with changing the date as of which it was to be judged in determining whether all the elements of a voidable preference were present."

In the eighth circuit there are cases in which language is found seemingly expressive of a contrary opinion; but Judge Dyer (In re Jackson Brick & Tile Co. [D. C.], 189 Fed. 636, 645) distinguished those cases from the case before him and held that a deed of trust executed in September, 1902, securing notes delivered to a bank for a present loan in December, 1902, but not recorded until August, 1906, within four months of the petition in bankruptcy, was not a voidable preference because the deed of trust was given as security for a present loan and not for an antecedent indebtedness. He was of opinion that the statute ought not be construed in such a way as to create a transaction different from what it actually was. We are of the same opinion, and follow here the decision of this court on the same subject in the case In re Klein. The result is that Mrs. Watson's mortgage is not obnoxious to any provision of the bankruptcy law applicable to the facts in this case.

The attacks of the trustee upon the mortgage having failed, the judgment of the District Court is affirmed, with costs.