## BERGOUGNAN RUBBER CORPORATION v. BELL.

(Circuit Court of Appeals, Sixth Circuit. November 3, 1925.)

No. 4386.

**1. Bankruptcy ⬅467—Findings on question of fact not set aside on appeal on anything less than demonstration of plain mistake.**

Where referee's finding on question of fact in bankruptcy is affirmed by District Judge, such concurrent findings will not be set aside on appeal on anything less than a demonstration of plain mistake.

**2. Bankruptcy ⬅340—Evidence held not to show that finding of referee that claimant had reasonable cause to believe that preference would be effected by transfer from bankrupt was result of plain mistake.**

Evidence *held* not to show that finding of referee in bankruptcy that, at time transfer of bankrupt's property to claimant was made, claimant had reasonable cause to believe that a preference would thereby be effected under Bankruptcy Act, § 60b (Comp. St. § 9644), was result of plain mistake.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Action by the Bergougnan Rubber Corporation against Herbert W. Bell, trustee of H. J. Alperin, bankrupt. From an order of disallowance, under Bankruptcy Act, § 57g, of plaintiff's claim against the bankrupt estate, plaintiff appeals. Affirmed.

Wm. R. Daley, of Cleveland, Ohio (Bulkley, Hauxhurst, Jamison & Sharp and Frank X. Cull, all of Cleveland, Ohio, on the brief), for appellant.

Marc. J. Grossman, of Cleveland, Ohio (Grossman & Grossman, of Cleveland, Ohio, on the brief), for appellee.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This appeal is from the order of disallowance (under section 57g of the Bankruptcy Act [Comp. St. § 9641]) of appellant's claim against the bankrupt estate, because of the receipt by appellant of a transfer of property to apply on appellant's claim; the court below finding that appellant had reasonable cause to believe that the enforcement of the transfer would effect a preference under section 60b of the act (Comp. St. § 9644).

[1] Beyond dispute the transfer was made within four months of bankruptcy, the bankrupt was then insolvent, and the transfer did effect a preference. The only controversy relates to the question of fact whether, at the time the transfer was made, appellant had reasonable cause to believe that a preference would thereby be effected. The referee's finding of such reasonable cause to believe was affirmed by the District Judge. It is a settled rule of this court that such concurrent findings will not be set aside on appeal on anything less than a demonstration of plain mistake. Deupree v. Watson, 216 F. 483, 485, 132 C. C. A. 543; Finance Co. v. Thompson (C. C. A.) 278 F. 597, 600.

There is little dispute over the facts. The case turns substantially on inferences of ultimate fact to be drawn therefrom. The outstanding facts found or stipulated may be thus sufficiently summarized: Bankrupt was a retail dealer in automobile tires, operating several stores. Appellant was a tire manufacturer. Six weeks or more before the creditors' meeting of October 7, which resulted in the return to various manufacturers of the great bulk of bankrupt's stock of tires, bankrupt owed appellant about $31,000, partly represented by trade acceptances not yet due. Appellant had been discounting all these acceptances, and from about six weeks previous to the creditors' meeting had furnished money to pay them in order to keep its own credit good at the bank. On August 29, bankrupt advised appellant's agent that its business was falling off, that the market was demoralized, and that he could not pay his bills, and must have an extension. The next day, in compliance with appellant's request of a few days earlier, bankrupt sent the latter trade acceptances on account of tires shipped August 29, amounting to upwards of $12,000, and running from 30 to 90 days, but failed to send a check for $1,900 asked by appellant. September 15, under agreement with appellant (who by that time was badly in need of money), bankrupt shipped the latter a carload of tires on account of a car shipped by appellant August 25, which bankrupt said he had not ordered, but which he had unloaded and distributed, being apparently unable to meet the required payment, even on partial acceptances which appellant offered to take. For this shipment of September 15, bankrupt was given a credit of about $12,000 (being a trifle more than the invoice of the August 25 car). By agreement the credit was of the cost price of the tires, which was somewhat above the then market price. September 16 and 19 appellant sent bankrupt checks, respectively, for about $1,700 and $1,000 to pay bankrupt's trade acceptances, maturing a day or two later than the respective remittance dates.

Meanwhile another creditor had instituted

an audit of bankrupt's books and secured bankrupt's agreement, pending examination into his affairs, to pay no money to creditors without the approval of the creditor in question. Appellant on at least one occasion urged bankrupt to make payment to it in spite of such agreement. On October 4, the audit having been completed, a meeting of creditors was arranged for October 7, and a copy of the auditor's report was mailed to appellant. The report and statement of assets and liabilities, which stated that no audit of the books had been made, owing to the fact that no system of accounts was maintained by bankrupt, showed a valuation of assets at $174,982.20. The liabilities shown were less by only $16,345.68. The report also showed that since September 1 a named creditor had begun replevin suit for $7,100 worth of tires sold bankrupt, most of which were included in the inventory which was made as of August 31, and that the tires on hand had been placed in the custody of the court until the suit should be settled. Excluding the replevined tires, the lease valued at the cost of $10,000 (less amortization of $833.34 for the expired term), fixtures valued at $3,700, and a delivery truck valued at $650, the liabilities would have appreciably exceeded the assets. (One tire company had a claim for $17,000 due which did not appear in the inventory. The shipment had been received by the bankrupt, but had not yet been billed.)

The creditors' meeting was attended by 20 or more creditors out of a total of about 56. Approximately $110,600 were represented, including all merchandise creditors having claims over $1,000. There was testimony (denied by appellant's representative but credited by the referee) that bankrupt told the creditors at this meeting that bankrupt was overstocked; that the tire market was demoralized, and sales were slow and bankrupt could not go on; that an extension of a year would be required; that it was a case of extension or bankruptcy, in which event there would be a severe loss to creditors. At the creditors' meeting an agreement in writing was made, purporting to be between bankrupt and 14 creditors who signed. By its terms a creditors' committee was selected, including appellant's representative, which was empowered to agree with bankrupt as to what merchandise should be returned to creditors and then to return it to them, and also to agree with bankrupt for an extension of time for the balance of his indebtedness, not to exceed a date about 13 months from the date of the meeting. By the agreement reached, one tire company was to receive all of its tires on hand, of the approximate value of $4,000 (its claim was less than $5,000); another, tires of the value of $17,000, about 90 per cent. of its claim; another, all its tires on hand, to the approximate value of $2,500, nearly 60 per cent. of its claim; the Henderson Company, all its stock of the approximate value of $3,000, nearly 45 per cent. of its claim; appellant, tires of the invoiced value of $17,000, about 53 per cent. of its claim.

It was further agreed that, after the return of the tires, bankrupt should pay all creditors 5 per cent. for five consecutive months; 10 per cent. for the next three months; 15 per cent. for the next three months. If all tires agreed to be returned were returned, bankrupt would have been practically without any goods to do business with. All the creditors who were to receive tires received them, except Henderson, who insisted on a payment of $4,000. Appellant seems to have received but about $10,000 worth of tires. October 14 bankrupt wrote claimant that, if he shipped any more tires, he would not have enough to do business. Creditors not attending the meeting of October 7 refused to accept the arrangement made. About October 20 appellant was informed of what had transpired, but insisted that bankrupt keep his agreement to return the remaining tires—about $7,000 at cost. Six days later a second creditors' meeting was called for October 30. On this date another creditors' committee was selected, including appellant's representative, who refused to serve, insisting on the return of tires to the total value of $17,000. Bankruptcy followed.

[2] We have not attempted to detail all the findings. Making due allowance for the distinctions urged by appellant between "cause to *believe*" and "cause to *suspect*," between cause to believe that preference "*would be*" effected and cause to believe that preference "*might be*" effected, and the weight appellants urge should be given to the fact that all the creditors at the October 7 meeting, authorized to act, signed an agreement authorizing the return of tires to a certain few creditors, it is enough to say that we fail to find any demonstration of plain mistake in the conclusion reached below, if, indeed (as we do not think), there is any reason to question the correctness of the conclusion.

The order of the District Court is accordingly affirmed.