## GROSSBERGER v. B. F. GOODRICH RUBBER CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 10, 1925.)

No. 4363.

1. **Bankruptcy ⬤═228 — District Judge is not bound by master's findings, which are against weight of evidence.**

The master's findings of fact will not lightly be set aside; but, if they appear to the District Judge to be against the clear weight of the evidence, he is not bound by them.

2. **Bankruptcy ⬤═467—Findings of master, if set aside in District Court, are without controlling force in Circuit Court of Appeals.**

Findings of master, if set aside in District Court, are without controlling force in Circuit Court of Appeals.

3. **Bankruptcy ⬤═467—Concurrent findings of master and Judge will not be disturbed on anything less than demonstration of plain mistake.**

Concurrent findings of master and judge will not be disturbed on anything less than demonstration of plain mistake.

4. **Bankruptcy ⬤═414(3)—Special master's conclusion that bankrupt's claimed expenditures during period of dissipation accounted for deficit held against clear weight of evidence.**

Special master's conclusion that bankrupt's claimed expenditures on women, liquor, and gambling for a period of over four months accounted for a deficit otherwise existing of $6,000 between his sales and bank deposits during the last few months before bankruptcy, after deducting expense of business, *held* against clear weight of evidence, so that District Court's order denying discharge was proper.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

In the matter of the estate of Bennett Grossberger, bankrupt, in which the B. F. Goodrich Rubber Company and another presented specifications of objections to discharge. Discharge denied, and bankrupt appeals. Affirmed.

Sidney N. Weitz, of Cleveland, Ohio, for appellant.

Stanley Denlinger, of Akron, Ohio (Burch, Bacon & Denlinger, of Akron, Ohio, on the brief), for appellees.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

PER CURIAM. This is an appeal by bankrupt from an order denying discharge under section 29b (1) and (2) of the Bankruptcy Act (Comp. St. § 9613). The objec-tions to the discharge are in substance that bankrupt concealed, and testified falsely regarding the disposition of, a difference of about $6,000 between his sales and bank deposits during the last few months before bankruptcy, after deducting the expenses of business, including salary of $100 per week drawn by bankrupt. This sum of about $6,000 bankrupt attempts to account for mainly by alleged expenditures and gifts to women of easy virtue, and in the purchase of liquor and losses by gambling, including some expenses in traveling in connection with women. The special master found the specifications not supported by the evidence and recommended a discharge; the District Judge sustained the objections to the special master's report and denied discharge.

[1-3] A preliminary question relates to the weight to be given the conclusions of the special master, who saw and heard the witnesses, none of whom appeared before the District Judge. It is the applicable rule in this court, as expressed in its latest utterance on the subject, that while the master's findings of fact will not lightly be set aside, nevertheless, if they appear to the District Judge to be against the clear weight of the evidence, he is not bound thereby, and, if set aside in the District Court, they are without controlling force in this court. In re Moran (C. C. A.) 299 F. 222, 224. The rule of credit to be given the master's conclusions, as stated in the Moran Case, is not essentially different from the formula in Ohio Co. v. Mack (C. C. A. 6) 163 F. 155, 158, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184, and is identical with that applied by this court on review of conclusions of fact reached in an equity cause by a judge who has heard the testimony in open court. See Oehring v. Fox (C. C. A.) 272 F. 833; In re Snodgrass, 209 F. 325, 326, 126 C. C. A. 251. It differs from the weight given concurrent findings of the master and judge, which will not be disturbed on anything less than a demonstration of plain mistake. Deupree v. Watson (C. C. A. 6), 216 F. 483, 485, 132 C. C. A. 543; Finance Co. v. Thompson (C. C. A. 6), 278 F. 597, 600.

[4] Are the master's findings against the clear weight of the evidence? The bankruptcy proceedings were begun May 23, 1923. Bankrupt, whose business before bankruptcy was selling tires and tubes in Cleveland, testified that from three to five times per week, mostly daytimes, he was for a considerable period (apparently four months or more) drinking heavily, visiting gardens and roadhouses in Cleveland, in the company of

lewd women, upon whom he spent money, the names of many of whom he claimed not to know. He claimed to have averaged an expenditure of $75 per day in Cleveland in this kind of dissipation, naming, however, but two (perhaps three) girls to whom he claims to have given money in any large sums, or on whom he spent money, except by expensive and dissipated forms of entertainment. He claims to have made in January a trip to New York, and there "met women," but does not claim to have spent much there. He says his whole trip (it does not affirmatively appear whether it was for business or pleasure) cost him about $500.

At some time between January and April he took a girl to Toledo in his car, spending one night with her at a hotel and leaving her in Toledo. He says he gave her there $100 to buy clothes, and that on each of half a dozen other occasions he gave her sums aggregating about $1,500. Before the master this girl, as a witness for creditors, admitted the Toledo episode, but said bankrupt gave her on that occasion but $10 (to buy shoes), and nothing more, and that on no other occasion did he give her anything, except that he once had her wrist watch repaired. Another of the two (or three) girls referred to he claimed to have taken out in Cleveland a dozen or more times, giving her from time to time moneys amounting to $200 or $300; also to have visited her in Chicago, apparently in February (perhaps later), and says he spent on that trip $400 or $500. Later he testified that the girl he visited in Chicago was not the one he first mentioned as having taken out in Cleveland, but another girl of the same Christian name, whose surname he could not recall. The girl whom he first said he visited in Chicago testified as a witness for creditors that she was out with bankrupt but twice, on one of which occasions he spent apparently less than $10 for a meal at a roadhouse; that he never gave her any clothes, or any money for any purpose; that at no time did he spend $50 or $100 for her, for either a good time or anything else; and that she was never in company with bankrupt in Chicago. The concession in appellee's brief that she admitted she was in Chicago with bankrupt is contrary to the printed record. We assume the admission is an oversight. The question is, however, not of controlling importance.

Bankrupt's testimony indicates that the greater part of his expenditures of this character were in connection with the two women who testified, if the one he was with in Chicago was one of those two. If not, bankrupt gave no means of identifying her. Bankrupt claimed, besides, to have lost $900 in December before bankruptcy, "all in one pot," shooting craps. The apparent proprietor of the place denied knowledge of such an occurrence. Bankrupt also testified that, since November before bankruptcy, he had spent for liquor, "mostly for parties," as much as $2,000; that in April he bought a quart every day or two, at about $15 per quart. The one person he would name as selling to him denied ever having done so. On advice of counsel and on his "privilege," bankrupt had refused otherwise to state where and from whom he had bought liquors. The objecting creditors seem, for the most part, at least, to have called all the witnesses whom bankrupt's testimony identified, so far as likely to have knowledge of the special and unusual payments.

Conceding appellant's contention that the testimony of the two women would warrant a conclusion that appellant had consorted with them, and assuming that bankrupt indulged and spent money in the kinds of dissipation he relies upon here, we cannot think that the right to discharge depends entirely upon the impression these women made upon the master. The outstanding reason given by the master for reaching his conclusions was that "in the main the bankrupt was quite frank in his testimony. There was an absence, in most instances, of a predilection for the answer 'I can't remember.' Except in matters where there was every probability that he could not remember with any exactness, the bankrupt quite generally betrayed a desire without hesitation to answer all questions; and this was true in matters where he might well have been expected to feel a hesitancy in telling the truth, because of a serious embarrassment to him."

A careful consideration of the record fails to impress us that bankrupt's testimony evidenced any hesitancy in stating his discreditable conduct. It was clearly to his interest to make it appear as expensive and as exaggerated as possible, and we are unable to escape a conviction that he did so. His testimony is entirely without corroboration, except to the meager extent pointed out in the testimony of the two women. It strongly impresses us as not entitled to belief. We are not impressed, as was the master, that bankrupt's story "is more in accordance with the probabilities than that of the ladies of indifferent virtue who were loath publicly to admit that they had profited inordinately by the extravagant indiscretions of the

young man who was only one of their occasional devotees." We are more impressed by the view of the District Judge that "one who is willing to publish the shame of his women associates to escape liability for wrongful conduct is hardly entitled to have his testimoy received with any sort of credulity. In fact, the bootlegger who denied him, and the women whom he claims to have generously aided down the primrose path, are entitled to as much credence as he is."

Making due allowance for the advantage possessed by the master from personally hearing and seeing the bankrupt, we are constrained to think that his ultimate conclusion, that the bankrupt's claimed expenditures on women, liquor, and gambling are enough to account for the deficit otherwise existing, is against the clear weight of the evidence.

The order of the District Court, denying the discharge, is affirmed.