## HYMAN v. SEMMES.

Circuit Court of Appeals, Sixth Circuit.
May 15, 1928.

No. 4966.

1. **Contracts** ⟜143—**Issue involving transaction depends on its nature, effect, and party's intention, not on name given transaction.**

Proper determination of issue involving transaction or agreement does not depend upon the name given to the transaction by the parties, or upon the express terms of any contract between them, but upon the nature of transaction, its legal effect, and the intention of the parties.

2. **Bankruptcy** ⟜467(4)—**Concurrent findings of referee and judge as to questions of fact are conclusive unless error is plain.**

Questions of intent, purpose, possession, and precise nature of dealings with bankrupt are questions of fact, or at best, mixed questions of law and fact, as to which concurrent findings of referee and judge, or master and judge, will not be set aside on appeal unless plain mistake or error in applying the law is shown.

3. **Bankruptcy** ⟜184(2⅝)—**Bankrupt lumber dealer's unrecorded bill of sale to investment company, financing purchases, with possession retained held invalid as to trustee.**

Transaction by which bankrupt lumber dealer, making purchases and sales of lumber in his own name, gave bills of sale to investment company financing purchases, *held* not to constitute bona fide purchase as against trustee in bank-

ruptcy, but merely transfer of security title subordinate to rights of trustee, where agreement was unrecorded, in view of fact that bankrupt retained sole possession of the lumber, and fixed compensation was to be paid the investment company for financing purchase.

4. **Bankruptcy** ⟜184(2⅝)—**Cards affixed to lumber, showing ownership of creditor given bill of sale as security, held not to give creditor interest against dealer's trustee in bankruptcy.**

Fact that investment company financing lumber dealer's purchases of lumber and taking bills of sale placed cards or notices on lumber to the effect that it was its property, *held* not to give investment company interest in lumber as against trustee in bankruptcy of the dealer, where bills of sale were given merely for security, and possession of lumber was surrendered to bankrupt, and cards were affixed to lumber in irregular manner, without effort to maintain notices or notify third parties.

Appeal from the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

In the matter of A. B. Speight, bankrupt. Proceedings by B. J. Semmes, trustee, against H. W. Hyman, to require defendant to turn over certain lumber, in which defendant filed a reclamation petition. An order of the referee requiring defendant to turn over the property to the trustee and denying defendant relief under his reclamation petition was approved by the District Court, and, from the judgment, defendant appeals. Affirmed.

Wils Davis, of Memphis, Tenn. (Davis Costen & Wallace, of Memphis, Tenn., on the brief), for appellant.

W. H. Borsje, of Memphis, Tenn. (Lamar Heiskell, of Memphis, Tenn., on the brief), for appellee.

Before DONAHUE and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

HICKENLOOPER, District Judge. For a number of years prior to January 1, 1924, the bankrupt, A. B. Speight, had carried on the business of buying and selling hardwood lumber, principally hickory cut to required dimensions, in the city of Memphis, Tenn. For the purpose of so conducting his business, he had leased and occupied a building at No. 883 North Front street in said city, where portions of the lumber were bundled and stored, and where such lumber would, when necessary, be trimmed or sawed to meet the requirements of the customer. Prior to January 1, 1924, the bankrupt had become largely indebted to appellant, H. W. Hyman, doing business as the Capital In-

vestment Company, through the discount of accounts receivable and the credit failure or bankruptcy of customers whose accounts were so discounted.

Being so indebted, the bankrupt entered into a new agreement with the Capital Investment Company, on or about January 1, 1924, whereby it was agreed that the bankrupt would continue to secure orders for dimension stock, and would from time to time procure the lumber to fill such orders from various mills. All such purchases and sales, with possibly only an occasional exception, were made in the name of A. B. Speight Company; all purchases being made on the basis of sight draft with bill of lading attached. Upon the arrival of the draft in Memphis, the draft, freight, and switching and handling charges would be paid by the Capital Investment Company, and a bill of sale given by A. B. Speight to that company covering the specific consignment. Nearly all of such consignments were handled by immediate reconsignment to purchasers, without unloading, but a number of cars which could not be immediately reshipped upon orders were unloaded and stored in the building of the bankrupt. The agreement of January, 1924, contemplated and provided that from the proceeds of sale of all lumber handled thereunder the Capital Investment Company was to receive reimbursement for the amount of its disbursements plus a fixed profit of $5 per thousand feet of lumber. Any profits in excess of $5 per thousand feet were to be credited to the open account of the bankrupt representing the old indebtedness and any subsequent advances made to the bankrupt for living expenses, etc.

On October 27, 1925, A. B. Speight was duly adjudicated a bankrupt upon his voluntary petition filed the same day. On October 28th and 29th there were shipped and billed two cars of lumber from the stock on hand in the A. B. Speight Company building. The proceeds of sale of these two cars amounted to the sum of $1,511.14, as found by the referee in bankruptcy who, under appropriate proceedings, issued an order upon H. W. Hyman, doing business as the Capital Investment Company, to turn over this sum to the trustee in bankruptcy of A. B. Speight. The present appeal involves not only the validity of this turnover order but also the question of ownership of the remaining stock on hand in the A. B. Speight Company building at the time of bankruptcy, as to which latter stock a reclamation petition was filed by H. W. Hyman. At the time of bankruptcy all the stock on hand and sought

to be reclaimed bore small hand-written cards or labels in the words, "This is the property of the Capital Investment Co." These cards had been removed from the lumber shipped, which, upon shipment, bore only a metal tag carrying the name of A. B. Speight Company. Upon petition for review, the court below approved the turnover order and upon report of the standing master the court denied relief to Hyman under his reclamation petition. The appeal is prosecuted as to both branches of this judgment of the District Court.

The correct determination of the issue here presented depends upon the construction to be given the contract between the appellant and the bankrupt. If the bills of sale given in pursuance of that contract were intended to convey title absolute, and if such bills of sale and the contract, under all the surrounding circumstances of the case, constituted a bona fide purchase by and sale to the Capital Investment Company of the lumber here in question, and such lumber was thereupon separately held and marked as belonging to the buyer, the right to possession as against the trustee may be conceded. Stelling v. G. W. Jones Lumber Co., 116 F. 261 (C. C. A. 7); In re Ozark Cooperage & Lumber Co., 180 F. 105 (C. C. A. 8). But if, on the other hand, such title as passed to the Capital Investment Company was intended to have, or in law had, effect only as security for the repayment of advances, past or coincident, then, under the law of Tennessee, such security title is subordinate to the rights of the trustee in bankruptcy, since the agreements and instruments by which it was obtained were unrecorded. Southern Bank & Tr. Co. v. Folsom (C. C. A.) 75 F. 929; Tennessee Nat. Bank v. Ebbert & Co., 56 Tenn. (9 Heisk.) 153; Snyder v. Yates, 112 Tenn. 309, 79 S. W. 796, 64 L. R. A. 353, 105 Am. St. Rep. 941; Wilkins v. McCorkle, 112 Tenn. 688, 80 S. W. 834; Williams v. First National Bank, 150 Tenn. 15, 261 S. W. 973; Shannon's Tennessee Code, § 3752.

[1] In such case, it has been repeatedly held that the proper determination of the issue does not depend upon the name given to the transaction by the parties nor upon the express terms of any contract between them, but upon the nature of the transaction, the legal effect of it as a whole, and the intention of the parties as evidenced thereby. Herryford v. Davis, 102 U. S. 235, 26 L. Ed. 160; Keystone Finance Corp. v. Krueger, 17 F.(2d) 904 (C. C. A. 3); In re Bettman-Johnson Co., 250 F. 657, 664

(C. C. A. 6); Le Sueur v. Manufacturers' Finance Co., 285 F. 490 (C. C. A. 6); Vander Lei v. Blakely, 284 F. 516 (C. C. A. 6); Tennessee Finance Co. v. Thompson, 278 F. 597 (C. C. A. 6). Compare also Home Bond Co. v. McChesney, Trustee, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444.

[2, 3] These questions of intent, purpose, possession, and the precise nature of the dealings between the parties are questions of fact, or, at best, mixed questions of law and fact, and the concurrent findings of referee and judge, or of master and judge, will not be set aside on appeal on anything less than a demonstration of plain mistake or error in applying the law. In re Maki, 18 F.(2d) 89 (C. C. A. 6); Bergougnan Rubber Corp. v. Bell, 8 F.(2d) 702 (C. C. A. 6); Grossberger v. B. F. Goodrich Rubber Co., 8 F.(2d) 964 (C. C. A. 6); Tennessee Finance Co. v. Thompson, supra, at page 600, and numerous other cases there cited. But we find no difficulty in arriving at the same conclusion as that reached by the District Court. The building in which the lumber was stored was leased and maintained by the bankrupt as his place of business. Practically all purchases and sales of lumber were made by the bankrupt in his own name. The lumber was in the custody and under the sole domination and control (that is to say, possession) of the bankrupt. Hyman was not engaged in the lumber trade as such, but in the financing of other enterprises. It is by no means the least significant of the features of the case that, as to transactions subsequent to January, 1924, a fixed and definite compensation was to be paid to Hyman for financing purchases, viz. $5 per thousand feet of lumber handled, nor that all sums secured from the sale of lumber in excess of such compensation were to be credited to the bankrupt upon past or future indebtedness. Finding himself heavily involved in January, 1924, the plan was quite manifestly devised to decrease the total of such indebtedness while retaining current and future purchases of lumber as security not only for contemporaneously created indebtedness, but, to the extent of any surplus profits, also for past indebtedness. We see no escape from the position that the appellant either became a partner, engaged in a joint enterprise with the bankrupt, after January, 1924, or that the interest which he secured in the stock of the bankrupt was intended to be and was solely in the nature of security. The first of these positions is denied; the second seems to us manifest. [4] The situation is in no way changed by the fact that, some time prior to bankruptcy, cards or notices were placed upon the lumber to the effect that such lumber was the property of the Capital Investment Company. As was so tersely stated by Judge Warrington in Cincinnati Equipment Co. v. Degnan (C. C. A.) 184 F. 834, 845: "The claim really means that the will of the lessor" (Hyman) "may be substituted for that expressed by the lawmaking power itself. No decision is cited in support of the claim." The bills of sale having been given for the purpose of securing the appellant, and possession of the lumber having been surrendered to the bankrupt, and the concurrent finding of the master and the District Court having been that the cards or notices of ownership were affixed to the lumber "in an indefinite and irregular manner, apparently without any effort to maintain the notices upon the lumber or to notify third parties of the ownership of the same," we are constrained to hold that such notices could not make effective an agreement or contract expressly declared null and void as to existing and subsequent creditors by the statutes of Tennessee. Whether in case of a bona fide sale such placarding would be sufficient appropriation of the goods to the sale to justify considering it as executed under the Tennessee law, we need not here determine.

The judgment of the District Court is affirmed.